Alexander R. MERCER and Richard H. Goldfine, M.D., and all others similarly situated, Plaintiffs,

v.

MICHIGAN STATE BOARD OF EDUCATION et al., Defendants.

Civ. A. No. 4–70164.

United States District Court, E. D. Michigan, S. D.

July 18, 1974.

Roy Lucas, Washington, D. C., George G. Newman, Detroit, Mich., for plaintiffs.

Gerald F. Young, Asst. Atty. Gen., Lansing, Mich., for defendants.

Before ENGEL, Circuit Judge, and FEIKENS and JOINER, District Judges.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

### I. Background

This action was commenced on August 7, 1973 when the plaintiffs filed a complaint for declaratory and injunctive relief against the state education law which prohibits discussion of birth control in the public schools. Plaintiffs seek declaratory relief and preliminary and permanent injunctions prohibiting enforcement of Michigan Statutes Annotated, §§ 15.3782 and 15.3789(3), M.C.L.A. §§ 340.782 and 340.789c, which prohibit instruction, advice or information on the subject of birth control in the course of sex and health education classes in the Michigan schools, and further involve parents withdrawing a student for no reason, other than the parents' own from classes on sex education, hygiene, or the symptoms of disease. The plaintiff Richard Goldfine is a physician, and the plaintiff Alexander Mercer is a teacher in the Detroit school systems. Plaintiffs sought in their complaint (1) the convening of a three judge district court pursuant to 28 U.S.C. §§ 2281 and 2284; (2) preliminary and permanent injunctions against enforcement of Michigan Statutes Annotated §§ 15.3782 and 15.3789(3)* and a declaratory judgment

---

\* Those statutes read as follows:

§ 15.3782 "It shall be the duty of boards in all school districts having a population of more than 3,000 to engage competent instructors of physical education and to provide the necessary place and equipment for instruction and training in health and physical education; and other boards may make such provision: Provided, That nothing in this chapter shall be construed or operate to authorize compulsory physical examination or compulsory medical treatment of school children. The board of any school district may provide for the teaching of health and physical education and kindred subjects in the public schools of the said districts by qualified instructors in the field of physical education: Provided, That any program of instruction in sex hygiene be supervised by a registered physician, a registered nurse or a person holding a teacher's certificate, qualifying such person as supervisor in this field: Provided, however, That it is not the intention or purpose of this act to give the right of instruction in birth control and it is hereby expressly prohibited to any person to offer or give any instruction in said subject of birth control or offer any advice or information with respect to said subject: Provided further, That any child upon the written request of parent or guardian shall be excused from attending classes in which the subject of sex hygiene or the symptoms of disease is under discussion and no penalties as to credits or graduation shall result therefrom."

§ 15.3789(3) "Any student upon the written request of parent or guardian shall be excused from attending classes in which the subject of sex education is under discussion and no penalties as to credits or graduation shall result therefrom."

that said statutes violate the First and Fourteenth Amendments and are unconstitutional; and (3) an order taxing all reasonable costs against the defendants and granting plaintiffs other relief deemed necessary, just or proper. With their complaint the plaintiffs filed an application for a three judge court and a memorandum of law in support of the application for the three judge court.

In September the defendants filed a motion to dismiss the plaintiffs' complaint. It was the position of the defendants that:

1. Plaintiff Dr. Goldfine lacked standing to maintain this action both on his own behalf and in a representative capacity on behalf of third persons not parties to this cause and, further, plaintiff Mr. Mercer lacked standing to maintain this action in a representative capacity on behalf of third persons not parties to this cause.

2. The plaintiffs' complaint failed to state a claim upon which relief could be granted, for the reason that the statutory provisions attacked therein are constitutional in every respect.

3. The plaintiffs' complaint failed to allege any grounds upon which any injunctive relief could be granted against the defendants; and

4. The plaintiffs' complaint failed to state a claim upon which relief could be granted against the defendant individual members of the State Board of Education.

The defendants also filed a response in opposition to plaintiffs' application for a three judge court wherein they asserted the same objections.

The Northeast Mothers Alert filed an *Amicus* brief with the consent of all the parties in support of the defendants' position seeking a denial of the relief sought by the plaintiffs.

The motion to dismiss was argued before the court, Judge Joiner sitting alone, and denied. In the court's order it was indicated that a three judge court would be requested.

The plaintiffs filed a motion for preliminary injunction, a brief supporting the motion for preliminary injunction, with exhibits, and the defendants filed a brief supporting their original motion to dismiss and opposing the motion for preliminary injunction. *Amicus* briefs were also submitted by the American Civil Liberties Union, and the Michigan Education Association, supporting the plaintiffs' motion for a preliminary injunction. Certain persons filed a motion to intervene as defendants. This was opposed by the plaintiffs.

## II. Standing

█ Dr. Goldfine does not have standing to maintain this action either on his own behalf or on behalf of any other persons. A litigant must show a demonstrable injury before he may be said to possess a sufficient interest in the action to entitle him to be heard on the merits. Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970).

In the present case Dr. Goldfine has failed to show any such injury. The statute under attack does not limit Dr. Goldfine's dissemination of birth control information anywhere except in a classroom, and Dr. Goldfine is not a certified teacher.

█ Courts are required ". . . to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated." Flast v. Cohen, 392 U.S. 83, 102, 88 S. Ct. 1942, 1953, 20 L.Ed.2d 947 (1968). Such inquiry determines whether or not the plaintiff is the proper and appropriate party to invoke federal jurisdiction. We find no nexus exists between Dr. Goldfine's status and the statute sought to be set aside. The statute causes no injury to Dr. Goldfine, and this is due to the lack of connection between Dr. Goldfine and the activity controlled by the statute. Indeed even if the existence of a nexus is compelled by pointing to the prohibition against "any person" offering instruction, it becomes so attenuated by its lack of effect that it

can no longer be said to be a logical nexus. Flast v. Cohen, *supra.*

Nor does it appear the plaintiffs are unaware of Dr. Goldfine's lack of standing. The plaintiffs have called the court's attention to Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), to support an argument that standing need not be resolved if there are other plaintiffs remaining to raise or press the lawsuit's substantive issues. This interpretation of the Supreme Court's action is not justified. The Supreme Court declined to determine whether or not certain peripheral plaintiffs had standing when other plaintiffs remained to force the issues in the *Bolton* lawsuit. This result is far from a mandate to lower courts to refuse resolution of standing questions merely because at least one of the other plaintiffs, in a group of plaintiffs, appears to have the requisite degree of standing.

United States v. Richardson, —— U.S. ——, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974), and Schlesinger v. Reservists Committee to Stop the War et al., —— U.S. ——, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), both reinforce the Supreme Court's insistence that litigation be carried on only by those who have standing.

The defendants concede Mr. Mercer has standing to raise the substantive issues. The defendants do not concede Mr. Mercer has standing to raise the rights of students or their parents. The defendants' objections are well taken.

The plaintiffs place primary reliance on Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1971). This reliance is misplaced in that in *Eisenstadt* the persons whose rights were being asserted had no way in which to raise their rights, *Eisenstadt,* p. 446, 92 S.Ct. 1029.

Similarly distinguishable is Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) wherein the court relied, at least in great part, on the confidential relationship between doctor and patient.

It has long been the rule that federal courts will find no standing when persons seek to assert the rights of third persons not before the court. Tileston v. Ullman, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1942). There are no doubt exceptions to the general rule, Eisenstadt and Griswold, *supra,* but the plaintiff has not placed himself within any of those exceptions.

Indeed, permitting Mr. Mercer to press the rights of students and teachers presents some rather peculiar problems not the least of which is how does the court determine whether or not any parents or students desire these laws to be changed. *No student and no parent has come forth in this proceeding,* or, to the court's knowledge, in any other proceeding, to seek an adjudication of their rights in their own behalf. In *Tileston* a doctor was not permitted to assert a third party's right to life. Here Mr. Mercer seeks to assert a third person's right to learn. The similarity is striking and this court is compelled to rule that Mr. Mercer has no standing to assert the rights of others which those others could easily assert themselves.

Mr. Mercer further purports to bring this action on behalf of all others similarly situated. No serious effort has been made by either side to determine whether or not the requirements of Rule 23 of the Federal Rules of Civil Procedure have been met. This proceeding is thus not certified as a class action. The court is cognizant, however, that Mr. Mercer is probably representative of a good many teachers and as such today's ruling may be felt by other than Mr. Mercer, for general principles of law are not enunciated for the individual. Rather, general principles of law encompass entire spectra of society, which, in this case, happens to be teachers.

### III. The Constitutional Issues

Mercer's basic contention is that *his First Amendment rights are being* infringed by the statutory prohibition against teaching birth control. Mercer's

contention is in essence a question of who controls the school's curriculum and to what extent.

The Supreme Court has answered the question in part by recognizing the undoubted right of the State to establish the curriculum. Epperson v. Arkansas, 393 U.S. 97, 107, 89 S.Ct. 266, 21 L.Ed. 2d 228 (1968). The Supreme Court has also recognized that the right of the State is not absolute. Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and Epperson v. Arkansas, *supra*. It is the duty of this court to sift the law and the facts and determine whether or not the State has overstepped its boundaries in prohibiting the teaching of birth control.

■ The State may establish its curriculum either by law or by delegation of its authority to the local school boards and communities. This is a long recognized system of operation within our Nation. *Epperson, supra,* 393 U.S. p. 104, 89 S.Ct. 266. This is in part a deference to local control which is a recognition of the varying wants and needs of the Nation's diverse and varied communities, each with its unique character, standards and sense of social importance of a variety of values.

The statutes under attack represent both forms of curriculum establishment. Michigan Statutes Annotated § 15.3782 forbids the teaching of birth control. Other statutes authorize the communities to establish a sex education program. The statute neither commands that such a program be established nor forbids its establishment. Thus the wants and needs of a tiny rural community wherein sex education might be vehemently opposed, and the wants and needs of the cosmopolitan university-oriented community that might be overwhelmingly in favor of sex education are both accommodated. The statute permits individual community members to be accommodated still further by permitting withdrawal of children from any sex education programs.

■ Among other things, teachers are engaged to impart to the students the various bodies of knowledge and learning contained in and offered by the curriculum. There is nothing in the First Amendment that gives a person employed to teach the Constitutional right to teach beyond the scope of the established curriculum. Nor are there any judicial decisions giving the teacher the right to teach beyond an established curriculum.

There are cases which touch on curriculum control. The Supreme Court struck down a law which ". . . sought to prevent . . . teachers from discussing the theory of evolution because it is contrary . . ." to the Book of Genesis. *Epperson, supra,* p. 107, 89 S.Ct. p. 272. The law was struck down on First Amendment Anti-establishment grounds.

Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), involved a teacher in a private school who was criminally prosecuted for teaching the German language. The statute there was struck down because it unconstitutionally interfered with the right of the individual guaranteed by the Due Process Clause to engage in any of the common occupations of life. The present case does not involve any of those three factors, to wit: a private school teacher, a statute including criminal sanctions or a common occupation of life.

On the other hand, courts have realized that certain limitations on what is to be taught are necessary. In Goldwasser v. Brown, 135 U.S.App.D.C. 222, 417 F.2d 1169 (1969), a teacher had been fired for what he had said in the classroom. The court sustained the firing despite protestations of suppression of First Amendment rights. The teacher had been hired to teach English and not to express his views on the Nation's Viet Nam policies and Anti-Semitism. There is a balancing test: the State's interest in heightening the level of the public services it offers by assuring the efficiency of its employees

in the performance of their tasks on the one hand, and the teachers' free speech interest on the other hand. In *Goldwasser* the employer thought English was best taught by omitting controversial and politically explosive issues; here, the State apparently believes its educational goals are best accomplished by omitting any discussion of birth control.

The application of *Goldwasser* to the present case is not an inappropriate decision. The whole range of knowledge and ideas cannot be taught in the limited time available in public school. This is especially true as to any given year or to any given course. Additionally, it is important that a student's program fit together and it therefore becomes necessary to make certain choices. The authorities must choose which portions of the world's knowledge will be included in the curriculum's programs and courses, and which portions will be left for grasping from other sources, such as the family, peers or other institutions.

Parents are not compelled to send their children to public schools. They are presented with a choice. They may opt to send their children to either public or private schools. This is a choice which is protected by the Constitution, Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). This gives the parents a degree of authority concomitant with the State and the local authorities in molding, shaping and selecting the type of education to which their children are exposed. Often the most obvious reason for choosing one over the other is a desire for sectarian or nonsectarian educations.

The parents who send their children to public schools accept the curriculum which is offered with certain limited exceptions. Parents may and often times do work at local and state levels in an effort to add to or delete from the curriculum certain material. Part of this state's curriculum is a further op-

tion for the parents; whether or not to permit their children to receive the benefits, if any, of a sex education program implemented by the local school boards. Other such options exist perhaps in choosing whether or not to take a certain course or courses. No teacher has the right to demand that his particular specialty be imparted to each and every student. The legislature has seen fit to insure a particularly sensitive subject be left to the wisdom of parents. *See* Goldwasser v. Brown, *supra.*

The statutes which have been presented for the court's scrutiny are not overly broad nor do they violate the First Amendment Anti-establishment Clause. The State has the power to establish the curriculum or to delegate some of its authority to local agencies for the final shaping of the curriculum. It also has the power to permit the parents to make the final decision as to exactly which courses the child should take. Implicit in such a state of the law is the observation that a teacher does not have a right, Constitutional or otherwise, to teach what he sees fit, or to overrule the parents' decision as to which courses their children will take unless, of course, the State has in some manner delegated this responsibility to the teacher which is not the case here.

There is no question but that a Constitutional statute may be applied in an unconstitutional manner, but the plaintiffs' contention that the statute is vague or overbroad to the point of causing the plaintiffs to refrain from certain constitutionally protected conduct to avoid the possibility of penalty cannot be decided in this case.

There is no indication that there have been any threats or reprisals against any teacher for conduct or speech in connection with family planning courses. Problems of abuse of this sort cannot be solved in the abstract pronouncements found in declaratory judgments, but can be reached

and solved only in connection with concrete problems presented after the facts have been fully defined. Solutions to this type of problem are best left until there is an ability to define specifically the acts and words that are asserted to offend, in other words, the acts and words that do not involve the teaching, advising, etc., on birth control but do fall within the overall concept of family planning or sex education.

■ The thrust of this suit is to obtain an abstract determination of the invalidity of the statute on its face at a time when there are no concrete problems before the court. No one is charged with violating the act. This is exactly the kind of case in which a declaration of invalidity of certain application would not be appropriate. The statute on its face is valid. The only question, if any, will come from its application. A plaintiff will not be heard to attack a Constitutional statute on the ground it might some day be applied to him in an unconstitutional manner. United States v. Raines, 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1959); Yazoo & Mississippi Valley R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 219, 33 S.Ct. 40, 57 L.Ed. 193 (1912). There is no indication there have been efforts to apply improperly the statute or that its application is causing any problems in connection with attempting to teach matters directed and authorized by the state.

There may be situations where application of the challenged statutes would raise Constitutional questions. The instant case, however, involves an abstract challenge to the validity of the statute and not a challenge of the Constitutional application of the statute. The court should wait until someone is alleged to have violated the statute and there are facts, as cold and hard as concrete instead of hypothetical, before attempting to write the outer limits of Constitutional authority in this area.

The defendants' motion to dismiss as to both statutes is granted. The motion of the intervenor to intervene in this case is denied as moot.

So ordered.

ENGEL, Circuit Judge (concurring in dismissal).

This is a classic example of a cause in search of a controversy.

Examination of the complaint filed demonstrates that it fails to allege a case of actual controversy within the meaning of either the Declaratory Judgment Act, 28 U.S.C. § 2201 or Article III, Section 2 of the United States Constitution.

The federal Declaratory Judgment Act neither creates nor enlarges jurisdiction. It merely provides an additional remedy in cases wherein an actual controversy, and hence jurisdiction, already exists. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). "Case or controversy" has been defined by the Supreme Court in Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941):

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

I would readily agree that governmental action which is claimed to have a chilling effect on First Amendment rights has historically been subject to the special scrutiny of the courts, but the constitutional requirement that there be a case or controversy to be ad-

judicated does not disappear in First Amendment cases.

> "The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance."

Golden v. Zwickler, 394 U.S. 103–110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

In United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), certain federal employees who desired to engage in some type of political conduct challenged the constitutionality of the Hatch Act, which they conceived would prohibit it. As to those employees who had not violated the Act, the court found there was no case or controversy:

> The power of courts, and ultimately of this Court, to pass upon the constitutionality of acts of Congress arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference. A hypothetical threat is not enough. We can only speculate as to the kinds of political activity the appellants desire to engage in or as to the contents of their proposed public statements or the circumstances of their publication. It would not accord with judicial responsibility to adjudge, in a matter involving constitutionality, between the freedom of the individual and the requirements of public order except when definite rights appear upon the one side and definite prejudicial interferences upon the other.[22]

> The Constitution allots the nation's judicial power to the federal courts. Unless these courts respect the limits of that unique authority, they intrude upon powers vested in the legislative or executive branches. Judicial adherence to the doctrine of the separation of powers preserves the courts for the decision of issues, between litigants, capable of effective determination. Judicial exposition upon political proposals is permissible only when necessary to decide definite issues between litigants. When the courts act continually within these constitutionally imposed boundaries of their power, their ability to perform their function as a balance for the people's protection against abuse of power by other branches of government remains unimpaired. Should the courts seek to expand their power so as to bring under their jurisdiction ill-defined controversies over constitutional issues, they would become the organ of political theories. Such abuse of judicial power would properly meet rebuke and restriction from other branches. By these mutual checks and balances by and between the branches of government, democracy undertakes to preserve the liberties of the people from excessive concentrations of authority. No threat of interference by the Commission with rights of these appellants appears beyond that implied by the existence of the law and the regulations.

United Public Workers v. Mitchell, supra, 89–91, 67 S.Ct. 564–565.

Similarly, the plaintiffs here have alleged "no threat of interference by the [defendants] beyond that implied by the existence of the law . . . ." Thus, while plaintiff Mercer alleges generally that he must "delete or omit curriculum material such as books, pamphlets," etc. "in his work with the development of curriculum materials," he neither claims that defendants have prevented him from using any particular source material, nor does he name a particular source that he wishes to use. We are left, as was the court in *Mitchell*, to speculate as to what he desires to use, and to presume that whatever he would ultimately choose would be prohibited by the defendants in obedience to the statute.

Likewise, Dr. Goldfine claims that he has "refrained from giving lectures because of the law in question." The complaint neither describes the content of the lectures he desired to give nor indi-

cates that the defendants forbade him to give a suggested lecture, or even advised against it.

> "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm, or threat of specific future harm . ."

Laird v. Tatum, 408 U.S. 1, 13, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154 (1971)

Unlike Susan Epperson, who was required by the school administration to employ a textbook teaching the Darwinian Theory in direct contravention of an Arkansas statute, Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), or Richard Steffel who at least was twice threatened with arrest under a Georgia criminal trespass statute when he and others distributed handbills in a shopping center opposing the Vietnam War, Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), plaintiffs give us nothing concrete against which to measure the effect, intent, or constitutionality of the statutes challenged here.

The Supreme Court in Steffel v. Thompson, supra, held that, where petitioner had been actually threatened with reprisal for his actions, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights". 415 U.S. at 459, 94 S.Ct. at 1216. So here, it may not be necessary that plaintiffs Mercer or Goldfine expose themselves to actual discharge from employment or other serious sanction, in order to arouse a justiciable controversy. Neither, however, is it necessary for this court to hypothesize one on their behalf.

Since there is no actual case or controversy to be adjudicated, this court has jurisdiction to do no more than dismiss the action. Thus I am unable to join in that portion of the majority opinion which addresses itself to the issue of constitutionality of the state statutes, as thoughtful and scholarly as it may be.

A regard for the principles of federalism suggests to me that we should refrain from expression on the constitutionality or unconstitutionality of these statutes until such time as it is necessary to a decision which this court has the power and duty to reach.

I would dismiss the complaint for lack of jurisdiction. F.R.Civ.P. 12(b)(1).