David **GOLDWASSER**, Appellant,

v.

Harold **BROWN**, Secretary of the Air Force, et al.

No. 22253.

United States Court of Appeals District of Columbia Circuit.

Argued June 11, 1969.

Decided Sept. 17, 1969.

Bazelon, Chief Judge, dissented.

Mr. Lawrence Speiser, Washington, D. C., with whom Mr. M. Michael Cramer, Washington, D. C., was on the brief, for appellant.

Mr. Gil Zimmerman, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellees. Messrs. John C. Eldridge, Norman Knopf and Robert V. Zener, Attys., Department of Justice, also entered appearances for appellees.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and McGOWAN, Circuit Judge.

McGOWAN, Circuit Judge:

This federal employee discharge case was heard by the District Court on cross-motions for summary judgment, and this appeal is from a decision adverse to the employee. The evidentiary record before the court was the administrative record compiled in the proceedings before the Civil Service Commission following upon the appeal to that agency of appellant's discharge by the Air Force.[1] A number of procedural errors are asserted as rendering the Commission's action defective. In addition, it is said that to terminate appellant's employment for the reason given is to trench upon rights protected by the Constitution, especially the First Amendment. We find none of these contentions to be compelling, and we affirm the District Court.

I

Appellant was a civilian employee of the Air Force who served as a language instructor in the Air Force Language School at Lackland Air Force Base, Texas. His job was to teach basic English to foreign military officers in this country as guests of the U. S. Government. The charge against him was that, in the face of prior warnings that discussion of controversial subjects (*i. e.*, religion, politics, race) during the class hours was contrary to Air Force policy, he made such forbidden statements on two separate occasions to his classes. One was to the effect that those who burn themselves to death as a protest against the Viet Nam War are the true heroes, and he wished he had the courage to do it himself. The other was that Jews are discriminated against in America, and that he had felt such discrimination throughout his life, including his service at the Language School.

The Chief of the Language School regarded this conduct on the part of appellant, after having been repeatedly warned not to engage in it, as prejudicial to the interests of the United States Government, and this was the stated ground in the notice of discharge given to appellant. The ultimate issue resides in the statutory formulation that "[N]o person in the classified civil service of the United States shall be removed or suspended * * * except for such cause as will promote the efficiency of such service * * *." 5 U.S.C. § 652 (a) (now 5 U.S.C. § 7501, recodified with minor variations in wording).

A hearing on appellant's appeal to the Civil Service Commission was held by an Appeals Examiner of the Dallas Regional Office. The position taken by appellant was that he had not made the two statements attributed to him and that he was, therefore, innocent of the charges against him. He represented, according to the Appeals Examiner, that he could not have made the statements because

---

1. We have adverted before to the need for legislative reexamination of the situation which presently obtains with respect to judicial review of Civil Service Commission determinations. There appears to be no reason why two courts should be required to review, by reference solely to the administrative record, the Commission's determinations. *See* Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416, 417 n. 1 (1968).

(1) his personal views on Viet Nam did not differ from those of the U. S. Government, (2) he had not experienced racial discrimination, and (3) the alleged statements were alien to any possible discussion of the lesson plan for the days in question.[2]

The record before the Appeals Examiner included affidavits from Air Force personnel, a report by a Civil Service Commission investigator, and oral testimony by appellant and other witnesses on his behalf. The Appeals Examiner concluded that the evidence supported the charges against appellant and that he had in fact made the statements in question after having been warned to refrain from such conduct.

The Commission's Board of Appeals and Review sustained this finding as against a challenge that it was contrary to the weight of the evidence, and it went on to find that the Air Force had not been "arbitrary, capricious, or unreasonable, and that [appellant's discharge] was for such cause as will promote the efficiency of the service." The Commission adopted the decision of its Board of Appeals and Review and denied appellant's request for reopening and reconsideration.

II

We turn first to appellant's claims of procedural inadequacies in the Commission proceedings. The principal one of these is that a fair hearing was denied appellant because the Air Force failed to produce certain witnesses pursuant to appellant's request. These witnesses were said to be under the Air Force's control and direction, and that the failure to produce them at the hearing was a conscious effort to impede appellant's presentation of his defense.

The witnesses in question were the foreign officers in the classes to which appellant allegedly made the offending statements. The record shows that on January 14, 1966, just after the Language School gave appellant preliminary written notice of its proposed dismissal action and of his opportunity to answer the charges upon which such dismissal would be based, appellant's retained counsel responded in a letter denying the charges and purporting to give notice that, if the Air Force persisted in appellant's removal, appellant would require the personal presence of the foreign students at the Commission hearing and that he looked to the Air Force to assure that presence. After the final notice of dismissal was forthcoming a few days later, appellant's counsel wrote again, identifying some additional foreign students and stating the same expectation as to their presence. The concern of these letters, however, was that the students might finish their visits and depart before the hearing, and it appeared to be counsel's purpose that he be notified of such departure in time for him to arrange to take depositions at appellant's expense.

The Air Force, on February 7, 1966, wrote appellant's counsel that the foreign students were in the country on invitational travel orders. As such, they were said to be in effect "guests of the United States Government" and not under its military jurisdiction; according-

2. In the written argument submitted on appellant's behalf to the Appeals Examiner, this statement appeared:

We will have to concede, initially that, just as a matter of good common horse sense, instructors in his position teaching foreign students should do their utmost to avoid controversial subjects, and there is no question but that he had been counseled to avoid controversial subjects. For instance, it is simply a matter of good common horse sense for Mr. Goldwasser, with his Yiddish background, to avoid engaging in head-on arguments with Arab students over the Arab-Israel problem.

Appellant's essential position throughout the Commission proceedings was that the Air Force was out to get him because he had resisted an overseas assignment— an assignment which was cancelled after appellant's Congressman had intervened on his behalf. Thus, appellant attacked the charges against him as fabrications masking the true reason for discharge, and not as improper grounds for discharge if true.

ly, the Air Force was "in no position to take any action on your request" that the students be produced at the hearing. The letter went on as follows:

The students will be here until May and it is entirely discretionary with them as to whether they would make statements, appear as witnesses or take any part in the matter in question. You are at liberty, however, to communicate with them directly should you so desire. The appropriate method would be to address your communication to the Liaison Officer or Senior Officer of the respective national group. For the Iranian students the Liaison Officer is Captain Mehdi Mirhosseini, 118 Surfrider, San Antonio, Texas; for the Greek students, the Senior Officer is Captain John Triantfillos, Greece - AF, CHR # 2, Lackland AFB Tex; and the Senior Officer for the Japanese students is Major Junkichi Imata, Japan - AF, CMR # 2, Lackland AFB Tex. They will in turn relay your request to the students in question and will, I am sure, advise you of what action you may expect from them.

Instead of approaching the students directly, however, appellant's counsel appeared to conclude that, with the appeal to the Commission filed, he would prefer to have the Commission do so. On March 4, 1966, he wrote the Appeals Examiner requesting that the Commission's investigator interview the students. The investigator was instructed to do so, and the result of his efforts in this regard is described in the portion of his report set forth in the margin.[3]

At the hearing, appellant objected to the failure of the Air Force to have the students present as witnesses. The Appeals Examiner pointed out that appellant had been notified that the Commission had no subpoena power and that it was appellant's responsibility to arrange for the appearance of witnesses. He directed that the hearing proceed. Appellant himself testified as to conversations he had had with some of the students in which they stated that they did not remember his having made the remarks in question. On cross-examination, appellant said he had not asked any of the students for written statements "since

3. Briefing instructions indicated the Investigator should obtain affidavits from ten former students of the Appellant. Five of these students were from Iran, four from Greece and one from Japan. Foreign students at the Air Force Language School, Lackland Air Force Base, are guests of the U.S. Government and are not under the military jurisdiction of the U.S. Air Force. Each national group is represented by a Liaison Officer or a Senior Officer. A meeting was held with the Liaison Officer from Iran and the Senior Officers from Greece and Japan. The purpose of this investigation was explained to them and they were told that the only persons available to substantiate the contentions of the Appellant were the students under their jurisdiction, and that this information could be vital in making a decision on this case. They were told that any testimony volunteered would be appreciated, whether it be favorable or unfavorable to the Appellant, and that their respective students would not ever be subject to subpoena to be a witness in a court.

The Liaison Officer from Iran and the Senior Officer from Greece indicated they

were definitely not in favor of the proposal. They indicated that they had been instructed not to get involved in United States' matters. They said they felt that this was a local matter which should be handled by the Language School. They did agree that they would contact the students, whose names were furnished by the Appellant, explain the matter to them and see if any of them desired to testify. They both reported back that each of their students, whose names were furnished, were contacted and that none of these desired to give * * * testimony or an affidavit.

Major Junkichi Imata, the Senior Officer from Japan, was one of the Appellant's former students, whose name was listed as having joined the class on December 2, 1965. Major Imata declined to take an oath or execute an affidavit. He merely stated that while he was in Appellant's class he had no recollection of the Appellant making any remarks concerning discrimination against Jews or any discussion concerning people who commit suicide by burning themselves. He stated that he was not familiar with the world "immolation."

he believed they would appear to testify on his behalf at the time of the hearing, but that he had not personally asked the students to appear at the time of the Commission's hearing since he understood from his Attorney that he did not have access to these individuals." The Air Force representative at the hearing stated that the Air Force had not at any time interviewed the students on this subject, and had no information as to their recollections.

The Appeals Examiner saw no procedural error in all this. He found as a fact that the students were not Air Force employees; that the Air Force had offered appellant full access to them; that appellant had talked to some of the students but he had not asked them to give statements or testify; and that the Air Force had not interviewed the students itself. To the Commission's Board of Appeals and Review, appellant asserted that there had been a deliberate concealment of evidence obtained by the Air Force in interviews with the students. The Board concluded that the record supported the Examiner's findings of fact to the contrary; and that there was, on this record and taking due account of the peculiar status of the foreign officer students, no failure by the Air Force to produce witnesses within its control amounting to a deprivation of due process of law.

■ We cannot say that the Commission erred in this view of the matter. The Commission regulations in being at the time of the hearing provided that, the Commission being without subpoena power, each side would arrange for the appearance of its witnesses. 5 C.F.R. § 772.305(c). It is true, of course, that there can be circumstances where the employing agency is so uncooperative and indeed aggressively hostile in responding to efforts to secure testimony from persons under its control as to make the proceeding unacceptably unfair. *See* Williams v. Zuckert, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486, rehearing granted and case remanded for further proceedings, 372 U.S. 765, 83 S.Ct.

1102, 10 L.Ed.2d 136 (1963). But this record is far from showing such conduct as this. The Examiner found, rather, that the Air Force left the foreign students free to do as they wished about testifying at the hearing, and gave appellant full and complete access to them. Appellant failed to pursue that access systematically or effectively, and is in no position, whatever the precise relationship of the foreign students to the Air Force may have been, to claim unfairness amounting to a breach of the Constitution. *Cf.* Bishop v. McKee, 400 F.2d 87 (10th Cir. 1968); Brown v. Zuckert, 349 F.2d 461 (7th Cir. 1965), cert. denied, 382 U.S. 998, 86 S.Ct. 588, 15 L.Ed.2d 486 (1966); and McTiernan v. Gronouski, 337 F.2d 31 (2d Cir. 1964).

■ As a second procedural defect, appellant now urges that it was improper for the Air Force to present its testimony at the hearing entirely by affidavit. The Commission's regulations, however, expressly provided for this manner of proceeding, 5 C.F.R. § 772.304 (b), and these do not appear to have been beyond the contemplation of the underlying statute. 5 U.S.C. § 7501. In any event, any concern appellant might have entertained on this score could have been dissipated by his own request that the affiants be produced for cross-examination—a privilege clearly available to him as a matter of law. 5 C.F.R. § 772.305(c). Having failed to manifest that concern at the hearing, we are not disposed to make its present assertion the occasion for overturning the Commission proceeding. Appellant was not denied a procedural right to which he was entitled. He rather must be taken to have decided, in the light of the nature of the affidavits and their compatibility with the report of the investigator, that it was not necessary to exercise it.

■ A third claim—made for the first time on this appeal—is that the Commission failed to afford appellant due process of law in that the Appeals Examiner had to reach his decision without the benefit of any clearly articulated standard for weighing the proof. We

think that this contention comes far too late to warrant its being made the occasion for *judicial* invalidation of *administrative* proceedings. The issue is one peculiarly appropriate for bringing to the attention of the administrative tribunal in the first instance in order that it may have the opportunity to consider, and to dispel if necessary, any infirmities which cause litigants before it to doubt the essential fairness of the hearing.

In any event, we are not convinced that appellant suffered any deprivation of constitutional proportions in this particular. The Appeals Examiner appears to have treated the case as one involving evidence looking in different directions, and that his job was to decide which side had made the more persuasive showing on the question of whether appellant had made the remarks in issue or whether he had not. The Board of Appeals and Review regarded this as the essential task placed upon the Examiner, and it thought the record amply supported the result he reached. Whatever the words used, or which might be used, in describing this process, appellant here received essentially what he was entitled to, namely, a chance to put his version of the facts before the Commission in competition with that supplied by the Air Force and to have the Commission decide whether the Air Force could fairly be taken to have supported its charges.[4]

Appellant's final claim of procedural injury is derived from an Air Force regulation which provided that any charges more than three years old should not be considered in connection with any removal of an employee from service. Appellant points out that the letter first informing him of the proposed removal referred to earlier warnings,[5] two of which fell outside the three year limit. Despite that, says appellant, the Appeals Examiner referred to these two outlawed incidents, and must, therefore, have had them in mind, to appellant's prejudice, in making his decision.

Whatever weight the Appeals Examiner may have given these items, however, the Board of Appeals and Review was explicit in its statement that, in order to avoid any question under the regulation, it "had dismissed them from consideration in arriving at its decision;" and we think this is adequate to preclude

4. Appellant argues in this court that, even if the requisite degree of procedural due process be deemed to have obtained in the conduct of the Commission proceeding, the finding that appellant made the statements in question does not justify any conclusion that his removal will, in the statutory phrase, "promote the efficiency" of the classified civil service. 5 U.S.C. § 7501. He asserts that the record is deficient in showing any adverse impact of appellant's conduct upon the interests of his employer. It is perhaps the case that neither the Appeals Examiner nor the Board of Appeals and Review addressed themselves in detail to this matter, but this appears to be due to the fact that appellant did not regard this as an issue at the hearing. His attorney's first letter in response to the proposed dismissal said that appellant emphatically claimed to be innocent of having made the alleged remarks which were characterized "as completely incongruous to any discussion" of the "lesson plans in both of these classes." Appellant made the same characterization in his testimony at the hearing. *See* Note 2 *supra*. His defense was that he had not said the things charged, not that they were harmless or that he was not on adequate notice of a policy against such remarks.

To the extent appellant urges upon us that we, in the exercise of judicial review, should set aside the Commission's action for want of sufficient proof, we look only to see "whether there is evidence of substance in [the] record which supports the Commission's view of the matter." Dabney v. Freeman, 123 U.S. App.D.C. 166, 358 F.2d 533 (1965). We find such evidence here.

5. "You had been warned on numerous occasions, specifically on or about 6 December 1960, 14 March 1961, 17 November 1963 and 20 September 1964 that controversial subjects must not be discussed with foreign students in the classroom. Despite this you made the following statements to foreign students."

the nullification of the Commission proceedings for any fear of prejudicial error on this score. Moreover, we share the Board's expressed doubt that there was any error on the part of the Appeals Examiner, prejudicial or otherwise. The reference to the earlier warnings was not to make them occasions for dismissal, but to show that appellant was not unaware of the Air Force's policy against the injection into classroom teaching of unrelated controversial subjects. The purpose of the regulation is to prevent present discharge for past conduct of a proscribed vintage. Appellant's discharge was not for what he had done more than three years back, but because he was still doing the same thing despite the prior history of notice and warning.

### III

In his judicial challenge to the propriety of his dismissal, appellant invokes substantive protections of the Constitution as well. He asserts that, even if it be assumed that he made the classroom statements attributed to him and under the circumstances alleged, he cannot be dismissed for that reason without infringement of his First Amendment right of free speech, and his Fifth Amendment right not to be subjected to a code of conduct which is unacceptably vague.

The latter contention is not one meriting detailed treatment in view of the concessions made by appellant at the administrative level. He did not there suggest that he was surprised by the view taken of his alleged conduct, or that he was confused as to what the Air Force standards of appropriate classroom conduct were. His denials that he said the things charged were repeatedly coupled with volunteered opinions that such conduct would, if it had occurred, have been improper. We are, thus, not impressed with his current claim of a constitutional deprivation which is rooted in the concept of the impenetrable mistiness of a governmental policy or prohibition.

The First Amendment issue deserves more sustained examination. Appellant and appellees join in identifying Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), as the most relevant authority. Appellant urges that the view taken there by the Supreme Court of the right of a teacher to speak his mind without forfeiting his job has full and complete application here. The Government distinguishes *Pickering* on its facts, but recognizes the significance for this case of the principle there stated. That principle is stated in essence to be that the public employer's interest in the efficient despatch of its business by no means invariably overrides the employee's interest in saying what he thinks. Where there is tension between the two, accommodation must be sought in the balancing process which not infrequently characterizes the task of constitutional interpretation.

■ The parties are, thus, in agreement upon the test to be applied but not upon its result. In *Pickering* the Supreme Court defined the clashing interests with some particularity. It recognized that public employment may properly encompass limitations upon speech that would not survive constitutional scrutiny if directed against a private citizen, although there is certainly no easy leap from this to the proposition that a public employee necessarily assumes monastic vows of silence when he looks to the taxpayer for his salary. The Government's interest as an employer is in heightening the level of the public services it renders by assuring the efficiency of its employees in the performance of their tasks; and efficiency comprehends the maintenance of discipline, the prevalence of harmony among co-workers, and the elimination of conduct which may reasonably be thought to have "impeded" the proper performance by a teacher of "his daily duties in the classroom." Conversely, the free speech interest of the teacher is to have his say on any and every thing about which he has feelings, provided there is no significant likelihood of impairment of his efficiency.

What are the weights to be placed in the scale in the case at hand? Preliminarily we note that the public school teacher in *Pickering* was not fired for what he said *in* class, but for writing a letter to a newspaper critical of the policies espoused by the School Board and School Superintendent in the allocation of school funds as between different educational programs. The efficiency with which Pickering taught geography or algebra to the pupils immediately in front of him was not affected by his extracurricular expressions.

The Air Force's case against appellant largely rests, however, upon the fact that he was supposed to be giving foreign officers a quick training in basic English, and that efficient utilization of the short time involved was of critical importance. Furthermore, appellant was not teaching the foreign officers current events, political science, sociology, or international relations. This is plainly evident from the record's disclosure that the Lesson Plan appellant was supposed to follow at the times in question called for language instruction on the subjects "At the Dentist" and "How to Test a Used Car." Appellant's observations on Viet Nam and anti-semitism would appear to have, at best, minimal relevance to the immediate classroom objectives.

We would also be blinking reality if we did not recognize that a class of foreign military officers at an Air Force installation on invitational orders presents special problems affecting the national interest in harmonious international relations. We are certainly not equipped to second-guess the agency judgment that the instructional goals of the Air Force program would be jeopardized by the teacher's volunteering his views on subjects of potential explosiveness in a multi-cultural group.

 On the record before us, we must assume that appellant was fired for what

he said *within* the classroom to foreign officers who were supposed to be learning how to cope with an English-speaking dentist or garage repairman, and not for airing his views outside the classroom to anyone who would listen. There is nothing to suggest that appellant was required to keep his opinions to himself at all times or under all circumstances, but only in the immediate context of his highly specialized teaching assignment— and we stress the uniqueness of appellant's teaching function in our disposition of this point. In view of that uniqueness, we cannot say that any of the interests underlying the First Amendment were served by appellant's insistence upon intruding his personal views into the classroom, or that his employer was disabled by those interests from imposing and enforcing the very limited restriction emerging from this record. Much greater limitations upon the civil freedoms of public employees generally have heretofore been sustained. *See* United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).

Affirmed.

BAZELON, Chief Judge (dissenting):

Several aspects of this case trouble me. First, if Williams v. Zuckert [1] is properly read, there is a substantial question whether the foreign students were sufficiently under the Air Force's control that it was required, on demand, to make at least a good-faith effort to produce them for the Civil Service Commission hearing. I would consequently remand to the District Court for a determination of that question. Second, my reading of the record convinces me that appellant's arguments to the Civil Service Commission were sufficient to raise his claims (a) that the standard proscribing his conduct was unconstitutionally vague, and (b) that the Commission did not fully consider whether appellant's state-

---

1. Certiorari dismissed, 371 U.S. 531, 83 S.Ct. 403, 9 L.Ed.2d 486, rehearing granted and case remanded, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963).

ments constituted sufficient grounds for discharge.

Williams v. Zuckert involved a regulation substantially similar to the one involved in this case.[2] The regulation was construed to mean that "the party desiring the presence of witnesses, either for direct examination or cross-examination [has] the *initial burden* of producing them." [3] But if that party has

> either discharged his initial burden under the applicable regulations by making timely and sufficient attempt to obtain their presence or, under the circumstances and without fault of his own, was justified in failing to make such an attempt,[4]

then the Agency, on demand, is required to make at least a good-faith effort to produce them.[5] It is by no means clear to me that appellant's repeated demands on the Air Force were not sufficient "attempt to obtain [the students'] presence;" [6] but even if they were not,

appellant may well have been "justified in failing to make such an attempt." The Civil Service Commission's investigator was able to contact only one of the ten students directly, and could persuade none of them to make affidavits in the matter.[7] Appellant's attorney could well have concluded, as he argued to the Commission,[8] that if the Commission could not persuade the students to testify, appellant alone would have little chance of success. If this is so, appellant has met his initial burden. Consequently, if the students were significantly under the Air Force's control, it was required to make a good-faith attempt to produce them for the hearing. Since the record is deficient as to the precise status of the foreign students, I would remand for a determination of that question.[9]

Furthermore, I cannot agree that appellant's arguments at the administrative level foreclose him from raising here the

2. The regulation in *Williams* provided:

> The Commission is not authorized to subpoena witnesses. The employee and his designated representative, and the employing agency, must make their own arrangements for the appearance of witnesses.

371 U.S. at 532 n. 3, 83 S.Ct., at 404. The regulation in the present case provides:

> Both parties are entitled to produce witnesses but as the Commission is not authorized to subpoena witnesses the parties are required to make their own arrangements for the appearance of witnesses.

5 C.F.R. § 772.305(c)(1) (1969).

3. 371 U.S. at 532, 83 S.Ct., at 404 (emphasis added).

4. 372 U.S. at 765, 83 S.Ct., at 1102.

5. In *Williams*, the desired witnesses were employees of the Air Force, and the Court assumed that the Air Force had the power to compel their attendance. *See* 372 U.S. at 765, 83 S.Ct. 1102. Here, the students were admittedly not "employees," but appellant has raised a substantial claim that they were significantly under the Air Force's control. I do not think that the Air Force's responsibility should turn upon questions of ultimate power; rather, the standard should be similar to that set in Barber

v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), so that the Air Force would be required to make a good-faith effort to produce the students, even if it could not compel their attendance should they refuse.

6. In its original opinion in *Williams*, the Supreme Court dismissed certiorari because

> neither petitioner nor his counsel made any request, prior to the hearing, *of the Air Force*, of the Commission or its examiner, or of the witnesses themselves, for their appearance * * *.

371 U.S. at 532, 83 S.Ct., at 404 (emphasis added). Unless the italicized language is to be regarded as surplusage, it must be assumed that at least in some circumstances a demand only on the employing agency is sufficient to meet the "initial burden" of production. *Cf.* 5 C.F.R. § 772.305(c)(2) (1969), adopted 6 days after the hearing in this case. 31 Fed.Reg. 6569 (May 3, 1966).

7. The examiner's lack of success is detailed in note 3 of the majority opinion.

8. See App. 167.

9. Although it is unquestioned that the students were not under the "military jurisdiction" of the Air Force, that should not be the relevant standard. See note 5 *supra*.

questions of vagueness and whether his conduct constituted sufficient grounds for removal. The question of vagueness was strenuously urged before the Appeals Examiner [10] and before the Board of Appeals and Review.[11] Likewise, he continuously urged that his conduct would not constitute sufficient grounds for removal even if proved.[12]

Since the majority affirms the District Court without deciding appellant's claims of vagueness and insufficient cause for removal, I refrain from discussion of these issues.

10. Appellant's counsel argued to the Appeals Examiner:

 We would wish to make it abundantly clear, however, that we are not taking the position that the Agency does not have the right to muzzle its employees. We do feel, however, that *the regulating muzzle must be clear, concise, crisp and definitive, and not wispy and ethereal and subject to whatever interpretation may suit the whim of a particular administrator.*

 App. 116 (emphasis added).

11. Appellant's counsel argued to the Board of Appeals and Review that it would be impossible to write a regulation prescribing appellant's conduct because

 it would be impossible to define "controversial subjects" and it would be impossible to lay down any specific guidelines for instructors to follow. * * * As a result we having nothing but "policy" which is ill-defined and ethereal. * * *

 App. 165.

12. Appellant's counsel argued to the Appeals Examiner: "Even if the charges were true (which we emphatically and vigorously deny), is this legal grounds for removal?" App. 107.

 He argued to the Board of Appeals and Review: "Even assuming for the sake of discussion that [Mr. Goldwasser] made these remarks (which he vigorously denies), * * * what specifically has Mr. Goldwasser done?" App. 166.