**Thomas S. CULVER, Plaintiff,**

v.

**SECRETARY OF the AIR FORCE,
Defendant.**

**Civ. A. No. 1102–73.**

United States District Court,
D. Columbia,
Civil Division.

Feb. 14, 1975.

David F. Addlestone, Lawyers Military Defense Committee of the Ameri-

can Civil Liberties Union Foundation, Washington, D. C., for plaintiff.

Michael A. Katz, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

JOHN H. PRATT, District Judge.

Plaintiff, a former Captain in the U. S. Air Force stationed in England, was tried and convicted by a general court-martial in 1971 on one charge of violating Article 133 (conduct unbecoming an officer and gentleman) and one charge of violating Article 92 (violation of a lawful general regulation).

The basis for the conviction under Article 133 was that plaintiff, while off duty and in civilian clothes, distributed to military personnel certain leaflets and publications advertising a demonstration to be held against the Vietnam War, thereby encouraging the military personnel to participate in the demonstration in violation of AFR 35–15(b).* The Article 92 conviction was predicated on plaintiff's violation of the same regulation, AFR 35–15(b), when he and a group of other persons met at Hyde Park and then presented an anti-war petition at the U. S. Embassy at Grosvenor Square, London. Plaintiff received a fine of $1,000 and later, upon release, received an honorable discharge.

On June 5, 1973, plaintiff filed the present case contending that his court-martial conviction should be set aside on the ground that, *inter alia,* Article 133 is void for vagueness and overbreadth.

In Parker v. Levy, 417 U.S. 733, 94 S. Ct. 2547, 41 L.Ed.2d 439 (1974), the Supreme Court held that Article 133 is not unconstitutional for vagueness. In light of *Parker,* plaintiff now contends that his court-martial conviction should be set aside and he is entitled to summary judgment because AFR 35–15(b), the specification underlying both charges, is vague and overbroad in violation of the

First and Fifth Amendments. He contends that (1) his conviction under Article 133 for soliciting others to violate the regulation is void, (2) his conviction under Article 92 for violating the regulation is void, and that (3) his challenge, because of alleged command influence, to the panel of court-martial members which heard his case was improperly denied.

The central question in this case is the constitutionality of AFR 35–15(b), which prohibits members of the armed forces from participating in demonstrations while in a foreign country. Plaintiff was convicted on one charge of soliciting others to demonstrate, and on one charge of demonstrating. Plaintiff argues that the critical word "demonstration" is nowhere defined in the statute, and that the term is vague, is susceptible of discriminatory enforcement, and fails to provide adequate standards for persons like plaintiff.

 The precise point of differentiation between what is and what is not vagueness is not always easy to delineate. As a general rule, the statute or regulation should give fair notice or warning of the prohibited conduct. Decisions of the courts upholding statutes as sufficiently certain rest upon the conclusion that they employed words or phrases well enough known to enable those within their reach to correctly apply them, or a well-settled common law meaning, or set forth a standard of some sort clearly apparent either from the rest of the statute or the subject matter with which it deals. Moreover, the Supreme Court has held that if "the general class of offenses to which [the provisions are] directed is plainly within [their] terms [they] will not be struck down as vague even though marginal cases could be put where doubts might arise." United States v. Harriss, 347 U.S. 612, 618, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954) (constitutionality of Lobby-

---

* AFR 35–15 reads: "Members of the Air Force are prohibited from participating in demonstrations when:

(b) In a foreign country."

ing Act upheld). Similarly, if this general class of offenses can be made constitutionally definite and certain by a reasonable construction of the statute, the court is under a duty to give the statute that construction. And it also seems clear that the courts do not require the same precision and specification of standards in military regulations as in criminal statutes.

As was the court in United States v. Bradley, 418 F.2d 688 (4th Cir. 1969), we are confronted with the issue of what constitutes a "demonstration." The *Bradley* court had to decide whether students who had distributed leaflets came within a regulation that prohibited "demonstrations." There the court declared:

> "If there is any feature common to all the listed acts, it is that the expression they embody is not merely offered to the public, but overtly displayed and proclaimed. They are 'demonstrative' activities. Such acts as picketing, sit-ins, protest marches, speeches and acts ordinarily associated with demonstrations, like parading, singing and display of placards, all, as appellants aptly put it, 'inevitably intrude upon the senses of those within earshot or eyesight.' The casual passerby cannot ignore the event—he must notice it and cannot escape exposure to its message." p. 690.

In the present case, plaintiff's activities must also have become apparent to and intruded upon the senses of those within earshot or eyesight. The casual passerby could not have avoided observing the gathering of some 200 American servicemen in the capital of a foreign country, a most bizarre occurrence, aside from the inevitable commotion and crowding of a group this size. The acts in this case, in our judgment, were a demonstration in a foreign country in violation of the regulations.

Moreover, it should be noted that at the time of the commission of the offense, plaintiff was not an untutored novice. He had been on active duty as a judge advocate for more than five years, and had extensive experience in the area of military criminal law. He was well aware of "the rules of the game" and cannot claim ignorance or naivete. Under these circumstances, it is clear that he had reasonable notice as to the meaning of AFR 35–15(b) and, like Captain Levy "that the particular conduct which he engaged in was punishable." Parker v. Levy, *supra*, 417 U.S. p. 755, 94 S.Ct. p. 2561. The claim of vagueness is without merit.

Plaintiff's next argument is that AFR 35–15(b), on its face and as applied, is overbroad and denied plaintiff freedom of speech under the First Amendment.

Under this doctrine, an enactment is overbroad if in its reach it prohibits constitutionally protected conduct. While the Supreme Court has recognized that the First Amendment is applicable to servicemen, Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), it has also realized that the right of free speech must be balanced against the military's peculiar need to safeguard discipline and morale. But there is a sharp difference between the civil and the military in the area of First Amendment protections. As the Supreme Court recently said:

> "While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission require a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it." Parker v. Levy, *supra*, 417 U.S. p. 758, 94 S.Ct. p. 2563.

Regulation as to time, place, and manner of exercise of rights of expression is proper where reasonably necessary to protect a valid public interest. Accordingly, in Goldwasser v. Brown, 135 U.S.App.D.C. 222, 417 F.2d 1169

(1969), a civilian employee of the Air Force was discharged as a teacher because of comments made in the classroom to foreign officers on the Vietnam War. In denying the teacher's claim that the discharge was a violation of First Amendment rights, the court said:

"We would also be blinking reality if we did not recognize that a class of foreign military officers at an Air Force installation on invitational orders presents special problems affecting the national interest in harmonious international relations. We are certainly not equipped to second-guess the agency judgment that the instructional goals of the Air Force program would be jeopardized by the teacher's volunteering his views on subjects of potential explosiveness in a multi-cultural group."

The courts, recognizing "that the military is, by necessity, a specialized society separate from civilian society," have been understandably loath to overturn military decisions where military personnel are concerned. Parker v. Levy, *supra*, 417 U.S. p. 743, 94 S.Ct. p. 2555. It is not the function of courts to "regulate the army," Reaves v. Ainsworth, 219 U.S. 296, 304, 31 S.Ct. 230, 55 L.Ed. 225 (1911), and "judges are not given the task of running the Army." Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). Courts must be "scrupulous not to interfere with legitimate Army matters," Orloff v. Willoughby, *supra*, p. 94, 73 S.Ct. p. 540, and are required to give "a substantial degree of civilian deference to military tribunals. In reviewing military decisions," the courts "must accommodate the demands of individual rights and the social order in a context which is far removed from those which" the courts "encounter in the ordinary run of civilian litigation, whether state or federal." Noyd v. Bond, 395 U.S. 683, 694, 89 S.Ct. 1876, 1883, 23 L.Ed.2d 631 (1969).

For a member of the armed forces stationed in a foreign country to encourage and participate in a mass gathering, in a public place, for the announced purpose of remonstrating against U.S. military policies, and with engineered publicity, cannot be squared with conventional concepts of good order, discipline and morale indoctrinated and ingrained in the military establishment since the founding of the Republic.

■ This Court has no difficulty in concluding that the exigencies and considerations attendant to service in a foreign country, as they relate to morale, discipline and effectiveness of mission, present conditions peculiar to military life so as to warrant the prohibition of demonstrations. More specifically, the setting and circumstances in this case were such that the application of AFR 35–15(b) to plaintiff was both reasonable, necessary and appropriate to the maintenance of morale and discipline. We deny the contention that the challenged regulation is overbroad either on its face or as applied to the facts of this case.

■ Plaintiff's final argument, that the panel of court-martial members should have been disqualified because of command influence requires only brief comment. About five days before the demonstration, the commander who became convening authority for plaintiff's court-martial distributed a letter to all officers concerning the legality of demonstrations under AFR 35–15(b). Basically, the letter said that all demonstrations by military personnel in a foreign country were illegal: "The prohibition applies whether the serviceman or servicewoman is on or off base, in or out of uniform, on or off duty. It also applies in full force irrespective of what term or name is given to the demonstration." Five of the members of the court-martial panel selected to hear plaintiff's case, as well as others, read and acknowledged receipt of the letter. Plaintiff argues that the letter indicated the commander's interpretation of AFR 35–15(b), and indicated to the jurors that they must sign and accept that interpretation. The military judge, after con-

ducting a voir dire of the jury, denied plaintiff's motion to disqualify the court-martial members.

Considering the circumstances surrounding the distribution of the letter and the contents of the letter itself, we are unable to agree with plaintiff that the present case presents an example of command influence.

In light of the foregoing discussion, it is by the Court this 13th day of February, 1975,

Ordered, that defendant's motion for summary judgment is granted; and it is

Further ordered, that this action be, and it hereby is, dismissed.