Martin A. THOMPSON, Appellant,

v.

The CITY OF MINNEAPOLIS, et al., Respondents.

No. 50374.

Supreme Court of Minnesota.

Dec. 12, 1980.

John P. Fitzgerald, Jr., Richard G. Day, Minneapolis, for appellant.

Robert J. Alfton, City Atty., and Jerome R. Jallo, Asst. City Atty., Minneapolis, for respondents.

SHERAN, Chief Justice.

Plaintiff–appellant Martin A. Thompson brings this appeal, challenging the adverse decision of the Hennepin County District Court on cross–motions for a summary judgment.[1] Appellant had asked the district court for a judgment that a Minneapolis Civil Service Commission rule, under which he was disciplined for making three statements published in a newspaper, was unconstitutional under the First Amendment.

We affirm the judgment of the district court that the rule was not unconstitutional as applied to one of appellant's three statements. As to the other two statements, we reverse the judgment that the rule was constitutionally applied. We affirm the judgment that the rule is not unconstitutional on its face and we affirm the other rulings of the district court.

Appellant had been employed as a building inspector with the Minneapolis Department of Inspections since 1969. On May 10, 1978, his supervisor decided to permit a

---

1. The district court granted the city's motion, ordering that the rule was neither unconstitutional as applied nor on its face, and that a temporary restraining order preventing the city from enforcing appellant's suspension be dissolved. The district court denied appellant's motion for an order declaring the rule unconstitutional on its face and as applied, a permanent injunction, reimbursement for lost wages and for costs, and a declaration that the incident not be included in his record.

newspaper reporter to accompany him on his inspection of the Phillips neighborhood, an area bounded by East Franklin Avenue, East Lake Street, Nicollet Avenue and 17th Avenue South. During the course of his duties, appellant made a number of observations which were recorded by the reporter and, which appeared the next day in her article, "Inspectors lurking in city alleys for cleanup drive," Minneapolis Star, May 11, 1978, at 1A, col. 4.

The newspaper article contained the following passages which are in issue here:

(1) "There are all these ADCs (persons who receive Aid to Families with Dependent Children) and they could care less," he said. "You take them to court and the judge says what can you do?";

(2) Thompson referred to the area he inspects as "the hell hole of the city";

(3) He pointed at one house where someone had thrown garbage out the second–story window and the garbage had rolled down the roof into the yard. "They used to be able to crap all over everything and move the tepee but they can't do that anymore," he said.

The day following the newspaper story, appellant was notified that he would be discharged. He requested and was given a hearing before a panel of three civil service commissioners. The commissioners dismissed one of the charges against appellant. But they concluded that appellant had violated Mpls.Civ.Serv.Comm'n R. 12.02(j), which prohibits conduct or speech wantonly offensive to the public,[2] and suspended him for a period of 90 days without pay.

In its findings of fact, the commission wrote the following:

13. The Department has testified that the primary reason for choosing the course of discharge was that an employee who "manifests a type of bigoted, racist philosophy that Mr. Thompson exhibited certainly . . . be that type of person, cannot fairly and honestly deal with minorities or poor people."

\* \* \* \* \* \*

16. That the statements as published were wantonly offensive. In its memorandum, the commission noted, "There is no question but that the language used by employee Martin A. Thompson is offensive towards the public."

Appellant did not challenge the decision of the commission. Instead, appellant brought an independent action in the district court under Minn.Stat. § 15.0424, subd. 1 (1978)[3] and 42 U.S.C. § 1983 (1976)[4] and 42 U.S.C. § 1988 (1976),[5] challenging the

2. Mpls.Civ.Serv.Comm'n R. 12.02 provides: "The following shall be sufficient cause for removal or discharge: [That the employee] \* \* (j) Is wantonly offensive in his conduct or language towards the public or towards city officers or employees."

3. Minn.Stat. § 15.0424, subd. 1 (1978), read as follows:

Any person aggrieved by a final decision in a contested case of any agency \* \* \* is entitled to judicial review thereof, but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo provided by law now or hereafter enacted. The term "final decision" as herein used shall not embrace a proposed or tentative decision until it has become the decision of the agency either by express approval or by the failure of an aggrieved person to file exceptions thereto within a prescribed time under the agency's rules.

This statute has since been amended.

4. 42 U.S.C. § 1983 (1976), prior to amendment in 1979, read as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

5. 42 U.S.C. § 1988 (1976) states in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. 1681 et seq.], or in any civil action or proceedings, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

constitutionality of the rule under which he had been disciplined.

The record indicates that appellant asserted that rule 12.02(j) was unconstitutional as applied and unconstitutional on its face in his complaint and motion for summary judgment. The district court ruled on both issues. However, in oral argument, appellant indicated that he relied solely on a facial challenge. For the sake of clarity, we decide both issues.

■ 1. The first question we examine is whether the First Amendment gives absolute protection from disciplinary action based on statements uttered by a public employee while in the course of his business. We find that it does not.

We fully recognize the unsurpassed value placed upon freedom of expression in our society and in our law. Public employees are not "relegated to a watered–down version of constitutional rights." *Garrity v. New Jersey*, 385 U.S. 493, 500, 87 S.Ct. 616, 620, 17 L.Ed.2d 562 (1967); *see Leininger v. City of Bloomington*, 299 N.W.2d 723 (Minn. 1980).

■ Nonetheless, government as an employer may be entitled to discipline an employee. The reason for discipline may stem from conduct and it may sometimes stem from words spoken or written by the employee. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Many other courts have permitted public employ-ers to regulate the speech of their employees,[6] although this result is not uniformly reached.[7]

■ In order to determine whether the government employer may or may not regulate the speech of an employee, we must "arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

In *Pickering*, a public high school teacher was discharged from his position after writing a letter to a newspaper attacking the school board's handling of bond issue proposals and its subsequent allocation of funds between educational and athletic programs. The United States Supreme Court balanced Pickering's interests and the government employer's interests and concluded that, in Pickering's case, the school board had no significantly greater interest in regulating his speech than it had in regulating the speech of any member of the general public. *Id.* at 573, 88 S.Ct. at 1737. Treating Pickering not as an employee, but as a member of the general public, the Court went on to say that Pickering could be disciplined by the school board only if his speech consisted of "false statements knowingly or recklessly made by him," *id.* at 574, 88 S.Ct. at 1737, the constitutional standard for a defamation action.[8] This was not

6. Courts which have permitted regulation include: *Goldwasser v. Brown*, 417 F.2d 1169 (D.C.Cir.1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970) and *Sprague v. Fitzpatrick*, 546 F.2d 560 (3d Cir. 1976), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977).

7. Courts which have not permitted such regulation include: *Tygrett v. Washington*, 543 F.2d 840 (D.C.Cir.1974) and *Atcherson v. Siebenmann*, 605 F.2d 1058 (8th Cir. 1979).

8. Other courts and commentators have agreed that *Pickering* establishes a two–stage process. First, interests are balanced to see whether the interests of the employer outweigh the interests of the employee. If they do, the employee may be disciplined. If they do not, then the employee must be treated as a member of the general public. The Court indicated, 391 U.S. at 573, 88 S.Ct. at 1737, that in this second stage the public employee may still be disciplined if the statements are defamatory under the standard established by *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *See Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 415 n.4, 99 S.Ct. 693, 696 n.4, 58 L.Ed.2d 619 (1979); *Atcherson v. Siebenmann*, 605 F.2d 1058 (8th Cir. 1979); *Goldwasser v. Brown*, 417 F.2d 1169 (D.C.Cir. 1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970); *Sprague v. Fitzpatrick*, 546 F.2d 560 (3d Cir. 1976), *cert. denied*, 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977);

proven in Pickering's case, and the Court found that his dismissal could not be upheld.

Because of the enormous variety of factual situations in which public employees may be disciplined as a result of their speech, the Supreme Court in *Pickering* did not create a single rule against which all situations must be measured, but instead set forth "some of the general lines along which an analysis of the controlling interests should run." *Id.* at 569, 88 S.Ct. at 1735. The school's interest was in rendering an effective public service. The school may have needed to maintain discipline and harmony among its employees in order to ensure a high quality of teaching. Accordingly, the school board may have needed to discourage conduct which may reasonably have been thought to prevent employees from carrying out their assigned duties. On the other side of the balance, employees had an interest in participating in free and open debate on issues of public concern, even if the issues nominally involved their employer. *See id.* at 569–72, 88 S.Ct. at 1735.

Unlike *Pickering*, when we balance interests in the case before us, we find that the government has a special interest as an employer which overrides the interest of the appellant. The city of Minneapolis has established the department of inspections to enforce the building code, the zoning code, the housing maintenance code, and other ordinances relating to construction and safety. *See* Mpls.Code of Ordinances ch. 28, § 28.50 (1978). As a government employer, the city of Minneapolis has an interest in seeing that inspections are properly carried out. Inspectors are required to enter property, homes, and other buildings in their search for unsanitary or unsafe conditions. *See* Mpls.Code of Ordinances ch. 244, art. II, § 244.130 (1976). In order to carry out their duties, inspectors must contact the residents or owners and obtain their consent, or they must go to court and obtain a search warrant. *See id.* The city of Minneapolis has a strong interest in ensuring a polite or cordial relationship between its inspectors and the residents they serve since that relationship might affect the ability of inspectors to carry out their duties.

Appellant most certainly has an interest in participating in free and open debate. There will be many occasions when an employee's interest in commenting on the effectiveness of the policies of his employer or the problems faced by the government in rendering services will override the government's interest in deterring the speech. Even in this case we would find that the government's interest did not override appellant's if his statements had been limited to the first two listed above, his statements that the residents "could care less" about their neighborhood and that the area was the "hell hole of the city." But appellant also made a reference to the residents' American Indian heritage in a derogatory manner, indicating that a lack of concern about sanitation and safety was derived from their cultural heritage. It cannot be maintained that the First Amendment shields appellant from disciplinary action based on this racist remark directed at the residents he served.[9]

Note, *The Nonpartisan Freedom of Expression of Public Employees*, 76 Mich.L.Rev. 365, 369 (1977). *But see Shipp v. Davis*, 48 Ill.App.3d 463, 6 Ill.Dec. 187, 362 N.E.2d 822 (1977).

**9.** It has been argued by appellant that the balancing process we engage in here requires a greater factual showing than was had in this case before the Minneapolis Civil Service Commission panel. We find no such general requirement. *See Goldwasser v. Brown*, 417 F.2d 1169 (D.C.Cir.1969), *cert. denied*, 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970); *Atcherson v. Siebenmann*, 605 F.2d 1058 (8th Cir. 1979); *Cowell v. Fuller*, 362 So.2d 124 (Fla.Dist.Ct. App.1978); *Shipp v. Davis*, 48 Ill.App.3d 463, 6 Ill.Dec. 187, 362 N.E.2d 822 (1977). However, other courts have required stronger showings. *See Sims v. Young*, 556 F.2d 732 (5th Cir. 1977); *Tygrett v. Washington*, 543 F.2d 840 (D.C.Cir.1974); *Grow v. Cook*, 60 A.D.2d 681, 399 N.Y.S.2d 938 (1977); *Hoopes v. City of Chester*, 473 F.Supp. 1214 (E.D.Pa.1979). Commentators have criticized the fact that courts have not demanded strong factual showings of "actual" detrimental impact on the employment relationship or the governmental employer. *See* Note, *Teachers' Freedom of Expression Outside the Classroom: An Analysis of the Application of* Pickering *and* Tinker, 8 Ga.L.Rev. 900, 904, 906–07 (1974).

768

In *City of Minneapolis v. Richardson*, 307 Minn. 80, 239 N.W.2d 197 (1976), this court encountered an analogous situation. While handling a disturbance on the street, two police officers dragged a 12–year–old child, who had been knocked to the ground by a police dog, face down on the sidewalk for at least 24 feet. They then took the child to the police station and during the ride used a racial epithet and made derogatory remarks. We found that they had violated the child's civil rights under Minn.Stat. § 363.03, subd. 4 (1971), a statute still in force today. There we wrote:

> We cannot regard use of the term "nigger" in reference to a black youth as anything but discrimination against that youth based on his race. * * * When a racial epithet is used to refer to a person of that race, an adverse distinction is implied between that person and other persons not of his race. The use of the term "nigger" has no place in the civil treatment of a citizen by a public official.

*Id.* at 88–89, 239 N.W.2d at 203.

We also note that other courts have upheld the discipline of public employees for racist remarks made to a subordinate, *Cowell v. Fuller*, 362 So.2d 124 (Fla.Dist.Ct. App.1978), and for remarks which disrupted a sensitive relationship between the government employer and the public it served, *see Smith v. United States*, 502 F.2d 512 (5th Cir. 1974); *Leslie v. Philadelphia 1976 Bicentennial Corporation*, 343 F.Supp. 768 (E.D.Pa.1972), *aff'd* 478 F.2d 1398 (3d Cir. 1973).

■ 2. Even though we have concluded that the government employer here may discipline appellant on the basis of his one racist remark without infringing appellant's First Amendment rights, we must still consider appellant's challenge that the Minneapolis Civil Service Commission rule under which he was disciplined was unconstitu-

tional. Appellant properly argues that he cannot be disciplined under a rule which is vague and overbroad, even if he could be punished under a more narrowly drawn rule. Mpls.Civ.Serv.Comm'n R. 12.02(j) prohibits all "public employees" from engaging in conduct or using language which is "wantonly offensive * * * towards the public or towards city officers or employees." [10] We find *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), to be dispositive and conclude that rule 12.02(j) is neither vague nor overbroad.

■ A rule is unconstitutionally vague if the words of the rule are not "sufficiently specific to provide fair warning," *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972), of the type of conduct which is punishable under that rule. A rule is unconstitutionally overbroad if its terms prohibit conduct or speech which cannot be prohibited under the United States Constitution, even if some conduct which it reaches is in fact punishable. We have observed that "[a]lthough the overbreadth and vagueness doctrines are conceptually distinct, in the First Amendment context they tend to overlap, since statutes are often overly broad because their language is vague as to what behavior is proscribed." *In re Welfare of S. L. J.*, 263 N.W.2d 412, 417 (Minn.1978). *See generally* Note, *The Void–for–Vagueness Doctrine in the Supreme Court*, 109 U.Pa.L.Rev. 67 (1960); Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844 (1970).

In *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Supreme Court upheld the discharge of a civil service employee under a statute permitting removal "for such cause as will promote the efficiency of the service." *Id.* at 140, 94 S.Ct. at 1637.[11] In light of the challenges of vagueness and overbreadth, the Supreme

10. The text of the rule is reprinted above at n.2.

11. The employee was also cited under a regulation issued pursuant to that statute requiring "that employees 'avoid any action . . . which might result in, or create the appearance of . . . [a]ffecting adversely the confidence of the pub-

lic in the integrity of [OEO and] the Government,' and that employees not 'engage in criminal, infamous, dishonest, immoral, or notoriously disgraceful or other conduct prejudicial to the Government.'" *Arnett v. Kennedy*, 416 U.S. at 142, 94 S.Ct. at 1638.

Court held that this statute did describe "as explicitly as is required" the conduct for which a government employee may be disciplined. *Id.* at 161, 94 S.Ct. at 1647. The Supreme Court found that the regulation governed "myriad different * * * employees performing widely disparate tasks," *id.* at 159, 94 S.Ct. at 1646, and applied to an "infinite variety of factual situations," *id.* at 161, 94 S.Ct. at 1647. The Court concluded that the rule was neither vague nor overbroad because it was essentially fair and greater specificity was impractical. *Id.; accord, Waters v. Peterson*, 495 F.2d 91 (D.C.Cir.1973).

The rules of the Minneapolis Civil Service Commission are meant to be applicable to the entire civil service of the city, except for the "unclassified service" consisting mainly of superintendents, elected officers, members of boards, and teachers. Mpls. City Charter ch. 19, § 4. The police officers, fire fighters, secretaries, file clerks, and building inspectors to whom it applies have radically different duties.

The phrase, "wantonly offensive," contained in rule 12.02(j), is not so uncertain in meaning as to deprive appellant of fair warning of the conduct or speech which is subject to disciplinary action. "Offensive" comprehends the idea of causing anger, injury, damage, resentment or displeasure. An offensive act that is "wanton" is brutally insolent or heedless of the rights and feelings of others. To be sure, the rule does not list every type of wantonly offensive behavior which a public employee might engage in. But based on common knowledge of human interactions, as well as applications of the rule, a public employee should be able to distinguish with sufficient specificity the sort of conduct or speech which is subject to disciplinary action by an employer from conduct or speech which is not.

The fact that conduct or speech which is protected under the First Amendment might be interpreted by some individuals to be "wantonly offensive" does not render this civil service rule unconstitutionally overbroad. Because of the impracticality and difficulty of making the phrasing more precise, generalizations must sometimes be used in regulations which apply to an array of public employees. It goes without saying that the rule must not be interpreted to apply to speech or conduct protected by the Constitution, under our analysis in the first part of this opinion.[12]

Affirmed in part and reversed in part, as indicated at the beginning of this opinion.

AMDAHL and SIMONETT, JJ., not having been members of this court at the time of argument and submission, took no part in the consideration or decision of this case.

---

12. Appellant suggests that the pre–*Arnett* holding of *Zekas v. Baldwin*, 334 F.Supp. 1158 (E.D. Wis.1971) should guide us here. There, three provisions of a Milwaukee County Civil Service rule, one of which was phrased much like rule 12.02(j), were found to be vague and overbroad. In another application of one of the three Milwaukee provisions, the Seventh Circuit found the provision not overbroad in light of *Arnett*. *See Herzbrun v. Milwaukee County*, 504 F.2d 1189 (7th Cir. 1974). In our view, we should be guided today by an interpretation of *Arnett*.